**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:26-cv-238**

| | |
|---|---|
| **STEVEN BYRD and JAMES LOWE,** | |
| **Plaintiffs,** | |
| **v.** | **Complaint for Declaratory Judgment** |
| **ARTHUR J. GALLAGHER & CO.,** | |
| **Defendant.** | |

Plaintiffs Steven Byrd ("Byrd") and James Lowe ("Lowe") (collectively, "Plaintiffs") allege and say as follows for their Complaint for Declaratory Judgment against Defendant Arthur J. Gallagher & Co. ("Gallagher"):

## NATURE OF THE MATTER

1.      This action arises from Gallagher's attempt to use grossly overbroad and unenforceable non-solicitation clauses to stifle valid competition and hinder employee mobility.

2.      Byrd and Lowe previously worked for Gallagher as group welfare benefits consultants. Their employment agreements with Gallagher contain a customer non-solicitation clause and an employee non-solicitation clause.

3.      After Byrd and Lowe ceased working for Gallagher in January 2026, Gallagher sent them cease and desist letters alleging they breached their employment agreements and threatening litigation to enforce the non-solicitation clauses.

4.      Both clauses are patently overbroad. They exemplify the sort of abusive clauses that North Carolina courts refuse to enforce because they protect no legitimate business interest of Gallagher, needlessly restrict Byrd and Lowe in their employment, and are against public policy.

5.      Gallagher is a global insurance brokerage conglomerate with approximately 71,000 employees across 130 countries. Yet it made no effort to tailor its non-solicitation clauses to the requirements of North Carolina law. Instead, Gallagher used the same boilerplate language it uses throughout the country.

6.      The customer non-solicitation clause prohibits Byrd and Lowe from "directly or indirectly" soliciting Gallagher's customers across *the globe* for services that Byrd and Lowe *never* performed while working for Gallagher and for whom Byrd and Lowe had *no* meaningful contact while at Gallagher. North Carolina law does not allow such expansive restraints on trade that are untethered to any legitimate business interest of Gallagher.

7.      The employee non-solicitation clause is equally overbroad and invalid. Its restriction extends to Gallagher employees whom Byrd and Lowe never met or worked with and do not even know.

8.      Accordingly, Plaintiffs seek a declaratory judgment that both clauses are void and unenforceable, a permanent injunction prohibiting Gallagher from enforcing the clauses, and other relief as set forth herein.

## THE PARTIES

9.      Steven Byrd is an individual who resides in Orange County, North Carolina. He intends to remain at this residence permanently and to return to it whenever he is away. He is a United States citizen and is domiciled in North Carolina. From approximately January 13, 2017 until January 2026, Gallagher employed Byrd as a group welfare benefits consultant in Gallagher's office in Durham, North Carolina and then in its office in Morrisville, North Carolina.

10.      James Lowe is an individual who resides in Durham County, North Carolina. He intends to remain at this residence permanently and to return to it whenever he is away. He is a United States citizen and is domiciled in North Carolina. From approximately January 13, 2017 until January 2026, Gallagher employed Lowe as a group welfare benefits consultant in Gallagher's office in Durham, North Carolina and then in its office in Morrisville, North Carolina.

11.      Upon information and belief, Gallagher is a Delaware corporation with its principal place of business in Illinois. Gallagher and its subsidiaries provide insurance brokerage, reinsurance brokerage, consulting, and third-party property/casualty claims settlement and administration services to entities and individuals around the world, including in North Carolina.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000.00, exclusive of

interest and costs, and Plaintiffs and Defendant are citizens of different states: Plaintiffs Byrd and Lowe are each citizens of North Carolina, while Defendant Gallagher is a citizen of Delaware and Illinois.

13.     Plaintiffs have a right to relief based on the federal Declaratory Judgment Act. 28 U.S.C. § 2201.

14.     This Court has personal jurisdiction over Gallagher because the events giving rise to Plaintiffs' claims occurred in North Carolina, as set forth herein. In addition, as described below, Gallagher has consented to jurisdiction in this Court.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Venue is also proper in this District pursuant to Byrd's Employee Agreement with Gallagher and Lowe's Employee Agreement with Gallagher. Those agreements contain the non-solicitation clauses underlying Plaintiffs' claims. Each agreement provides, in Section 11(B), that "[t]he parties agree that the sole and exclusive venue of any dispute between the parties with respect to this Agreement, or any matters related thereto, will be a state or federal district court located within the federal judicial district in which Employee resides." Byrd and Lowe each reside within this District.

## FACTUAL BACKGROUND

**A.  Gallagher is a global conglomerate that provides a broad range of insurance brokerage and risk management services throughout the world.**

16.  Gallagher describes itself as "one of the world's largest insurance brokerage, risk management and consulting firms."[1]

17.  Gallagher has over 71,000 employees, offers services in approximately 130 countries, and does so through approximately 500 subsidiaries.[2]

18.  Gallagher's retail insurance brokerage operations "place nearly all lines of commercial property/casualty and health and welfare insurance coverage."[3] Gallagher's annual SEC report identifies 32 different lines of insurance coverage, ranging from Aviation to Workers' Compensation.[4]

19.  In addition to Gallagher's insurance brokerage work, Gallagher also operates globally through its risk management segment, in which it provides claims adjustment services.[5]

**B.  Byrd and Lowe worked in only one of Gallagher's numerous service areas: group welfare benefits.**

20.  Gallagher has alleged that Byrd and Lowe each entered into an Employee Agreement ("Agreement") with Gallagher on or about January 13, 2017. A copy of

---

[1] https://www.ajg.com/about-us/
[2] *Arthur J. Gallagher & Co.*, 10-K for fiscal year ended Dec. 31, 2025, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000354190/6ab40ea2-9e16-499b-8b36-97424ddbe4df.pdf
[3] *Id.*
[4] *Id.*
[5] *Id.*

Byrd's Agreement is attached as **Exhibit A**. A copy of Lowe's Agreement is attached as **Exhibit B**. The language of each Agreement relevant to this case is identical. For ease of reference, this Complaint cites only to Byrd's Agreement.

21.     As noted, while employed at Gallagher, Byrd and Lowe each worked in Gallagher's office in Durham, North Carolina and then in its office in Morrisville, North Carolina.

22.     Although Gallagher brokers many lines of insurance coverage and provides various services globally as described above, Gallagher's Durham and then Morrisville office focuses on only three areas: welfare benefits, property and casualty, and human resources.

23.     Byrd and Lowe each worked in only one area for Gallagher: group welfare benefits.

24.     Byrd and Lowe ceased working for Gallagher in January 2026.

**C.      Byrd's and Lowe's Employee Agreements contain a customer non-solicitation clause and employee non-solicitation clause encompassing every line of service Gallagher provides throughout the world.**

25.     Byrd's and Lowe's Employee Agreements contain an extremely broad customer non-solicitation clause applicable to any "Account of the Company" and any "Prospective Account of the Company." (Ex. A § 8(A)(1).) "Company" is defined to mean not only Gallagher, but all of its global "subsidiaries, divisions and affiliated and related companies." (Ex. A, Preamble.) The Employee Agreement does not, however, identify any of these hundreds of companies by name. (*Id.*)

- 6 -

26.     The customer non-solicitation clause broadly prohibits Byrd and Lowe from "directly or indirectly" soliciting any customer of Gallagher or its global affiliates with respect to a wide range of financial, risk management, insurance, human resources, and emergency and disaster prevention services. (Ex. A § 8(A).)

27.     Gallagher's restrictions extend not simply to the "solicit[ation]" of these business services, but to the "direct[]" or "indirect[]" "accept[ance]" of any business, or "counsel[ing]" or "consult[ing]" with companies or individuals in any of these areas with respect to certain "Account[s]," namely those companies for which Byrd or Lowe performed "any" listed functions during the last two years. (Ex. A §§ 8(A), 8(A)(5)–(6), 8(B).)

28.     The listed functions include: handling "self-insurance programs, insurance claims, risk management services, emergency or disaster prevention or management services, or other insurance administrative or service functions," or providing "employee benefit brokerage or consulting, or administration services," "in the area of group insurance, defined benefit and defined contribution pension plans, individual life, disability and capital accumulation products, investment advisory services, wealth management, or group retirement services; defined benefit and defined contribution pension services; human resources consulting services, including, without limitation, compensation consulting, compensation program design, compensation and benefits surveys, and on-site human resources management; and all other employee benefit areas the Company is involved with." (Ex. A § 8(A)(1).)

29.     As noted, while employed by Gallagher, Byrd and Lowe worked only in the area of group welfare benefits, and not in any of the other functions listed above.

30.     The employee non-solicitation clause is even broader than the customer non-solicitation clause. It imposes a two-year restriction on Byrd and Lowe not to "directly or indirectly solicit, induce or recruit" any of Gallagher's 71,000 global employees who have been provided "Confidential Information," regardless of whether Byrd or Lowe has worked with, met, or even knows the employee. (Ex. A § 8(E).)

31.     The Agreement contains no comprehensive definition of Confidential Information. Instead, it defines the term vaguely to mean any and all "confidential and proprietary data and trade secret information of the Company," with a laundry list of non-exhaustive examples that "may" constitute Confidential Information. (Ex. A § 2(B).)

32.     Gallagher made no effort to tailor either the customer non-solicitation clause or employee non-solicitation clause to North Carolina law, which governs both Agreements pursuant to Section 11(B). (Ex. A § 11(B).)

33.     While the customer non-solicitation clause contains unique terms for employees located in Alabama, Louisiana, Oklahoma, Oregon, and Utah (Ex. A § 8(A)(1)–(4)), it contains only boilerplate terms as to all other states, including North Carolina.

34.     After Byrd and Lowe notified Gallagher of their resignation from Gallagher in January 2026, Gallagher sent Byrd and Lowe identical letters demanding compliance with the customer non-solicitation clause and employee non-solicitation clause in their

Employee Agreements. Copies of these letters are attached hereto as **Exhibit C** and

**Exhibit D**.

35.     In subsequent correspondence, counsel for Gallagher alleged that Byrd and

Lowe are in "apparent violation" of their Employee Agreements. In the correspondence,

Gallagher demands that Byrd and Lowe "comply with their agreements, cease and desist

any violations thereof, and preserve all evidence related to this dispute." Gallagher's

counsel recently demanded that Lowe "***immediately cease and desist from any further***

***solicitation—direct or indirect—of restricted Gallagher clients and prospects***"

(emphasis in original), and stated that Gallagher "will not hesitate to file suit against"

Lowe.

**D.      Both the customer non-solicitation clause and employee non-solicitation clause are vastly overbroad and therefore unenforceable.**

36.     North Carolina courts carefully scrutinize non-solicitation clauses because

of their anticompetitive nature and potential for abuse.[6]

37.     "To be valid, the restrictions must be no wider in scope than is necessary to

protect the business of the employer."[7] Otherwise, the clauses do no more than hinder

permissible competition and violate public policy. *Id.*

---

[6] *McGriff Ins. Servs., Inc. v. Ryan Hudson & Digital Ins., LLC*, No. 22 CVS 680, 2023 WL 197441, at *6 (N.C. Super. Jan. 17, 2023).
[7] *Aesthetic Facial & Ocular Plastic Surgery Ctr., P.A. v. Zaldivar*, 264 N.C. App. 260, 272 (2019) (internal quotations omitted).

38. "If a contract by an employee in restraint of competition is too broad to be a reasonable protection to the employer's business it will not be enforced."[8]

39. "Ultimately, whether a restrictive covenant is reasonable and enforceable is a matter of law for the Court to decide."[9]

40. As the party seeking to enforce the non-solicitation clauses, Gallagher must prove that the clauses are reasonable.[10]

      **1.    The customer non-solicitation clause is overbroad and unenforceable.**

          **i.    The clause prohibits Byrd and Lowe from soliciting Gallagher customers with whom they had no material contact.**

41. The customer non-solicitation clause extends to non-solicitation of Accounts for which Byrd or Lowe performed *any* of the "foregoing functions" listed. (Ex. A § 8(A)(1).)

42. That list is extremely broad. It includes *any* "function" related to *any* kind of insurance, including even "administrative or service functions." (*Id.*)

43. That restriction not only precludes Byrd and Lowe from performing group welfare benefit plan services for clients with whom they had an ongoing relationship, but also from calling upon any Account for which they might have performed a transitory,

---

[8] *Design Gaps, Inc. v. Hall*, No. 23CV040664-590, 2024 WL 1917606, at *3 (N.C. Super. May 1, 2024) (internal quotations omitted).

[9] *Prometheus Grp. Enters., LLC v. Gibson*, No. 22 CVS 14236, 2023 WL 2589284, at *5 (N.C. Super. Mar. 21, 2023).

[10] *Id.* at *8 n.6; *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 655 (2009).

minor, or perfunctory administrative or service task, including one that involved little or no contact with the account and involved no access to confidential information.

44.    Under North Carolina law, Gallagher has no legitimate interest in prohibiting Byrd or Lowe from soliciting a Gallagher customer with whom they had no material connections or contacts. "[C]ovenants prohibiting competition for a former employer's customers are only enforceable when they prohibit the employee from contacting customers with whom the employee actually had contact during his former employment."[11]

45.    Put simply, a "client-based limitation cannot extend beyond contacts made during the period of the employee's employment."[12]

46.    Here, the restriction extends far beyond Byrd's and Lowe's actual contacts and is unenforceable.

---

[11] *Hamilton v. French/W./Vaughan, LLC*, No. 5:24-cv-456-FL, 2025 WL 790630, at *3 (E.D.N.C. Mar. 12, 2025) (internal quotations omitted). "[M]inimal or merely indirect contact" is insufficient." *Fin. Carrier Servs. LLC v. Kingpin Cap. Inc.*, No. 24CV055870-590, 2025 WL 1719898, at *3 (N.C. Super. June 19, 2025) (invalidating non-solicitation clause that "purports to bar [defendant] from directly or indirectly doing business with FCS's entire customer base—including the portion with which he had minimal or merely indirect contact and even prospective customers with which he may have had no contact at all").

[12] *Andy-Oxy Co., Inc. v. Harris*, No. COA19-10, 2019 WL 5742106, at *6 (N.C. Ct. App. Nov. 5, 2019) (internal quotations omitted). *See also Sterling Title Co. v. Martin*, 266 N.C. App. 593, 598–99 (2019) (invaliding non-solicitation clause applicable to clients with whom defendant had "any form of 'contact'" during his employment); *Prometheus*, 2023 WL 2589284, at *8 (same); *Design Gaps*, 2024 WL 1917606, at *3 (same).

- 11 -

### ii. The clause prohibits Byrd and Lowe from soliciting customers with respect to services that they never provided while working at Gallagher.

47.     A non-solicitation clause cannot extend to work or services that the employee never provided for his former employer.[13] But that is exactly what Gallagher's clause does.

48.     Byrd and Lowe worked solely in the group welfare benefits space while employed by Gallagher.

49.     They did not perform any services relating to any other kind of insurance or the other services included in the non-solicitation clause, which include: "risk management services," "emergency or disaster prevention or management services," "other insurance administrative or service functions," "defined benefit and defined contribution pension plans," "investment advisory services," "wealth management," "compensation consulting," "compensation program design," "compensation and benefit surveys," or "on-site human resources management." (Ex. A § 8(A)(1).)

50.     Yet the clause prohibits Byrd and Lowe from performing any of these services for a client anywhere in the world whom they served solely with respect to group welfare benefit plans or performed some other perfunctory administrative service. (*Id.*)

51.     This restriction is overbroad and unenforceable under North Carolina law. "[A] provision that, read literally, would prohibit [the former employee] from soliciting a company or individual with whom he had limited contact regarding any of the business

---

[13] *McGriff*, 2023 WL 197441, at *12.

activities of [the prior employer] – even those activities that do not involve the sale of insurance products – is unreasonable in its breadth."[14]

      iii.    **The clause prohibits Byrd and Lowe from soliciting "Accounts," but the term "Accounts" is undefined and far too vague to be enforceable.**

52.    As numerous courts have held, an employer cannot hold an employee to a solicitation restriction relating to customers that the employee cannot easily identify from the language of the agreement.[15]

53.    Here, the Employee Agreement does not define "Account." Section 8(A)(5) states that "Account" "will be construed broadly to ***include*** all users of insurance services" (emphasis added), but it is not limited to such users, and therefore extends to any person or firm that had any kind of account relationship with Gallagher or any one of its 500+ subsidiaries at the time Byrd and Lowe ceased their employment.

54.    In addition, an "Account" includes hundreds of companies all over the world with whom neither Gallagher, Byrd, nor Lowe had *any* previous contact or relationship.

---

[14] *McGriff*, 2023 WL 197441 at *12. *See also NFH, Inc. v. Troutman*, No. 19 CVS 209, 2019 WL 5595166, at *11 (N.C. Super. Oct. 29, 2019) (same); *Evo Corp. v. Poling*, No. 15 CVS 4230, 2015 WL 4997401, *2 (N.C. Super. Ct. Aug. 20, 2015) (same), *vacated upon entry of consent judgment* (N.C. Super. Ct. Oct. 1, 2015).

[15] *See Microban Int'l, Ltd. v. Kennedy*, No. 3:22cv00620-KDB-DSC, 2023 WL 2533085, *5 (W.D.N.C. Mar. 15, 2023) (definition of "customer" "could cover anyone who Kennedy contacted, who contacted him, or who had contact with someone he supervised about any topic that was "part of [his] employment with the Company;" "implausible that the Defendant could be sure he was complying with this provision as it is doubtful that he knows every 'customer' who contacted someone he supervised").

- 13 -

55. An "Account of the Company" includes not simply an entity that Gallagher, Byrd, or Lowe worked with in the past, but also affiliates of Gallagher customers in totally different industries, with whom neither Gallagher, Byrd, nor Lowe had any contact or business relationship. (*See* Ex. A § 8(A)(6) (extending non-solicitation clause to affiliates of any "Account" of Gallagher, where the same management group within the Client Group has the primary decision-making authority with respect to contracting for services of the type rendered by the Company".)

56. That is not enforceable under North Carolina law.[16]

### iv. The clause's prohibition on soliciting "Prospective Accounts" is equally overbroad.

57. Under Section 8(B)(1), the clause restricts instances where Byrd or Lowe never met or had contact with the prospective client, but simply "assisted" (even in a clerical or ministerial fashion) in submitting a proposal of some kind.

58. Moreover, this restriction applies to accounts of the "Company," where "Company" is defined to include the hundreds of Gallagher subsidiaries throughout the world. (Ex. A §8(B)(1), Preamble.)

59. This restriction is plainly overbroad: "A restriction on solicitation that extends to areas where [the employee] had no connections or personal knowledge of

---

[16] *E.g.*, *Wells Fargo Ins. Servs. USA, Inc. v. Link*, No. 17 CVS 12848, 2018 WL 2123700, at *9 (N.C. Super. May 8, 2018), *aff'd*, 372 N.C. 260 (2019) (prohibition unenforceable because "Company" "is defined so broadly . . . that it sweeps within its ambit customers of far-flung Wells Fargo subsidiaries and affiliates unrelated to Wells Fargo's commercial insurance business").

customers is unreasonable, especially when it sweeps in customers of affiliated companies for whom the employee did not work."[17]

60.     Further, nothing in the definition of "Prospective Account" requires that Gallagher even be pursuing work with that potential customer.

61.     The definition applies to "any entity" where Byrd or Lowe performed certain actions during the one-year period preceding the end of their employment. (Ex. A § 8(B)(1).) So, if the prospective customer never returned Gallagher's call, or expressly declined to do business with Gallagher, Byrd and Lowe would still be prohibited from soliciting that customer.[18]

62.     The same problem applies to the prohibition on soliciting any "Account of the Company." (Ex. A §§ 8(A)(1), (5).) By its terms, the prohibition encompasses not only Account(s) that are Gallagher customers at the time Byrd and Lowe ceased their employment, but also any Account for which Byrd or Lowe performed any of the listed functions "during any part of the two-year period immediately preceding [his] termination." (Ex. A § 8(A)(1).)

63.     The prohibition thus encompasses *prior* Gallagher customers that were *not* Gallagher customers when Byrd and Lowe ceased their employment.

64.     That overbroad restriction is unenforceable.[19]

---

[17] *Design Gaps*, 2024 WL 1917606, at *3 (internal quotations omitted).
[18] *Cf. Evo Corp.*, 2015 WL 4997401, at *6 (observing that covenant impermissibly extended beyond customers that employer had at the time of employee's termination).
[19] *See Evo Corp.*, 2015 WL 4997401, at *6; *Bite Busters, LLC v. Burris*, No. 20 CVS 899, 2021 WL 1161316, at *5 (N.C. Super. Mar. 25, 2021) ("But where, as here, a non-

### v. The clause's prohibition on "indirect" solicitations only exacerbates the above defects.

65. The non-solicitation clause prohibits Byrd and Lowe from both "directly *or indirectly*" soliciting the expansive functions identified. (Ex. A § 8(A)(1) (emphasis added).)

66. North Carolina courts view the term "indirectly" with deep skepticism and will often refuse to enforce a restrictive covenant because of that term alone.[20]

67. Byrd's and Lowe's Employee Agreement only confirms—and exacerbates—these concerns.

68. It says that the prohibition on "indirect" solicitation precludes not only Byrd and Lowe, but also their new employer, from even announcing or communicating that Byrd or Lowe is working for a competitor. (Ex. A § 8(B)(2).)

69. Simply updating a LinkedIn profile would purportedly constitute prohibited "solicitation."

70. Between the breadth of this definition of solicitation and the prohibition against acceptance of business, the non-solicitation clause operates as an impermissible worldwide noncompete.

---

solicitation clause reaches not only clients, but potential clients, and extends to areas where [p]laintiff had no connections or personal knowledge of customers, the [provision] is unreasonable." (internal quotations omitted)).

[20] *E.g.*, *Akzo Nobel Coatings, Inc. v. Rogers*, No. 11 CVS 3013, 2011 WL 5316772, at *11 (N.C. Super. Nov. 3, 2011) ("North Carolina courts have refused to enforce noncompetition clauses using the terms 'directly or indirectly.'").

           **vi.**    **Under the look-back rule, the clause restricts solicitations over a four-year period, further underscoring the clause's unreasonableness.**

71.     A non-solicitation clause must be "reasonable as to time" to be enforceable.[21]

72.     Under North Carolina law, the duration of a restrictive covenant is calculated by adding (1) the period for which it applies following employment termination to (2) the period over which the covenant "looks back."[22]

73.     Under this rule, the duration of Byrd's and Lowe's restriction is *four years* because the clause extends two years after the termination of their employment and encompasses any Account of the Company for which they performed any of the listed functions during the "two-year period immediately preceding" such termination. (Ex. A §§ 8(A) & 8(A)(1).)

74.     The four-year restriction is excessive, especially in light of the overbreadth of the remainder of the clause.[23]

---

[21] *Prometheus*, 2023 WL 2589284, at *4.

[22] *See id.* at *9 ("[B]ecause [the covenant] contains a 'look back' provision to include any customer Prometheus solicited or attempted to solicit for any product or service within two years prior to Gibson's resignation, two years must be added to the one-year duration of the restriction, making the time restriction three years." (internal citations and quotations omitted).)

[23] *E.g.*, *Prometheus*, 2023 WL 2589284, at *9 ("A three year limitation is a significant undertaking, even for a narrowly drawn non-solicitation provision. And this one is not narrowly drawn."); *Sterling*, 266 N.C. App. at 597 ("In evaluating reasonableness as to time and territory restrictions, we must consider each element in tandem . . . Although either the time or the territory restriction, standing alone, may be reasonable, the combined effect of the two may be unreasonable.").

75.     For each of the above reasons, among others, the customer non-solicitation clause is unenforceable.

### 2.     The employee non-solicitation clause is equally overbroad and unenforceable.

76.     Gallagher's prohibition on employee solicitation is just as invalid as the customer non-solicitation clause.

77.     The Agreement prohibits Byrd and Lowe from "directly or indirectly" soliciting any one of the approximately 71,000 employees of Gallagher or its more than 500 global subsidiaries, whether or not the employee worked in the group welfare benefits space where Byrd and Lowe worked, whether or not Byrd or Lowe had any contact with the employee, whether or not Byrd or Lowe knew the employee before leaving Gallagher, and whether or not the employee even worked for Gallagher during the time Byrd and Lowe were employed there.

78.     This breathtakingly broad prohibition is unenforceable.[24]

### 3.     Neither the Employee Agreement's representations of reasonableness, nor North Carolina's narrow "blue pencil" doctrine, can save the overbroad non-solicitation clauses.

#### i.     North Carolina law disregards a restrictive covenant's representations as to whether it is reasonable.

---

[24] *See, e.g., Med. Staffing Network, Inc. v. Ridgeway*, 194 N.C. App. 649, 657 (2009) (holding unenforceable a prohibition on defendant's solicitation of employees of plaintiff's affiliate for which defendant did not work).

79. Gallagher included self-serving language in the customer non-solicitation clause that its restrictions "are reasonably necessary and narrowly tailored" to protect Gallagher's interests. (Ex. A § 8(A).)

80. But an employer cannot render an unlawful clause valid by simply declaring it so. Were it otherwise, North Carolina's prohibitions on overbroad covenants would be meaningless.

81. Accordingly, North Carolina courts evaluate the enforceability of restrictive covenants by examining their terms and disregard conclusory language as to whether those terms are reasonable.[25]

        **ii.    North Carolina's narrow "blue pencil" doctrine cannot cure the extensive deficiencies of the non-solicitation clauses.**

82. The overbroad clauses itemized above may not be rewritten by the Court.

83. "The courts will not rewrite a contract if it is too broad but will simply not enforce it."[26]

84. North Carolina's "strict blue pencil doctrine" is a rule "of excision, not modification."[27] "A court at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable. It may not otherwise revise or

---

[25] *See NFH*, 2019 WL 5595166, at *10 ("The Court is not bound by the parties' representation that a covenant is reasonable. . . . [P]arties cannot include provisions in their non-competes to circumvent the Court's limitations on enforcing unreasonable covenants." (citing cases).)

[26] *Prometheus*, 2023 WL 2589284, at *7 (internal quotations omitted).

[27] *Id.* (internal quotations omitted).

rewrite the covenant."[28] "To be a 'distinctly separable' provision, other restrictions in the covenant must not be dependent on the portion to be excised."[29] "Furthermore, application of the blue pencil rule is within the discretion of the Court."[30]

85. Here, the two non-solicitation clauses are fundamentally flawed for the reasons described above. None of their numerous defects is "distinctly separable."

86. To the contrary, the comprehensive and overbroad clauses make up *four pages* of the Employment Agreement. There is no excision that can save them.[31]

87. Nor can Gallagher save its overbroad clauses by offering to enforce them in a narrower manner than is written. That argument is merely an end-run around the blue pencil doctrine that courts reject.[32]

---

[28] *Id.* (internal quotations omitted).
[29] *Id.*
[30] *Id.*
[31] *E.g.*, *id.* (declining to "excise the word 'indirectly' or make other requested changes to save the clause); *NFH*, 2019 WL 5595166, at *14 ("[T]he Court cannot remedy either covenant by striking out certain words because the problem with the Restrictive Covenants is that the language used itself is overly broad, and the Court cannot choose different words to give the covenants a more defined scope."); *Kingpin*, 2025 WL 1719898, at *3 (refusing to excise the "integral phrases" "directly or indirectly" or "financial services"); *Evo Corp.*, 2015 WL 4997401, at *6 (same).
[32] *See Wells Fargo*, 372 N.C. at 273 (refusing to "read provisions out of the Restrictive Agreements based on Plaintiff's representations [of narrower enforcement] in order to make the covenant enforceable. A court may not construe an agreement in a way that ignores or deletes its plain terms.").

- 20 -

## FIRST CLAIM FOR RELIEF

### (Declaratory and Injunctive Relief)

88.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

89.     Under 28 U.S.C. § 2201, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

90.     Byrd's Employee Agreement and Lowe's Employee Agreement each contains a customer non-solicitation clause and employee non-solicitation clause.

91.     Each Employee Agreement, including the customer non-solicitation clause and employee non-solicitation clause, are governed by North Carolina law.

92.     The customer non-solicitation clause and employee non-solicitation clause in each Employee Agreement are unenforceable under North Carolina law, including for the reasons alleged above.

93.     Despite the unenforceability of the clauses, Gallagher is attempting to enforce the clauses against Byrd and Lowe through cease-and-desist letters and the threat of litigation.

94.     Byrd and Lowe seek a Declaratory Judgment that the customer non-solicitation clause and employee non-solicitation clause in their respective Employee Agreements are void and unenforceable.

95.     An actual controversy exists between Plaintiffs and Gallagher because Gallagher is seeking to enforce its unenforceable customer non-solicitation clause and employee non-solicitation clause against Plaintiffs.

96.     Plaintiffs' interest in the enforceability of the customer non-solicitation clause and employee non-solicitation clause in their respective Employee Agreements and declaratory relief is direct, substantial, quantifiable, and immediate.

97.     Declaratory Judgment and injunctive relief are appropriate in the manner requested herein by Plaintiffs. A judicial declaration is necessary to adjudicate the parties' rights in view of the existence of a genuine controversy.

<u>**REQUEST FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant as follows:

1.      A judicial declaration that the customer non-solicitation clause and employee non-solicitation clause contained in Byrd's Employee Agreement and Lowe's Employee Agreement are void and unenforceable;

2.      A permanent injunction prohibiting Defendant from enforcing the customer non-solicitation clause and employee non-solicitation clause contained in Byrd's Employee Agreement and Lowe's Employee Agreement;

3.      An award of costs, expenses, and fees (including attorneys' fees) to Plaintiffs;

4.      For the costs of the suit as provided by law; and

5.    For such other and further relief, both legal and equitable, as the Court may deem just and proper.


Dated:  March 11, 2026                    ROBINSON, BRADSHAW & HINSON, P.A.


                                          */s/ David C. Wright*
                                          David C. Wright, III
                                          N.C. State Bar No. 11161
                                          DWright@rbh.com

                                          600 S. Tryon St., Ste. 2300
                                          Charlotte, North Carolina 28202
                                          Telephone: 704.377.2536
                                          Facsimile: 704.378.4000

                                          Mark A. Hiller
                                          N.C. State Bar No. 50004
                                          MHiller@rbh.com

                                          1450 Raleigh Road, Ste. 100
                                          Chapel Hill, North Carolina 27517
                                          Telephone: 919.328.8800
                                          Facsimile: 919.328.8791

                                          Attorneys for Plaintiffs